**MATERIAL SUPPLY INT'L, INC., Plaintiff,**

v.

**SUNMATCH INDUSTRIAL CO., LTD., et al., Defendants.**

**Sunmatch Industrial Co., Ltd., Counterclaimant,**

v.

**Material Supply Int'l, Inc., Jewett–Cameron Lumber Corp. and MSI–Pro Co., Inc., Counterclaim Defendants.**

**No. Civ.A. 94–CV–1184(RMU).**

United States District Court, District of Columbia.

June 29, 1999.

Larry Klayman, Paul Orfanedes, Klayman & Associates, P.C., Washington, DC, for plaintiff, Material Supply International, Incorporated (MSI).

Louis Mastriani, Michael Doane, Adduci, Mastriani & Schaumberg, L.L.P., Washington, DC, for defendant, Sunmatch Industrial Company Limited.

Mark D. Plevin, Jeffrey A. Spector, Crowell & Moring LLP, Washington, DC, for defendants MSI–Pro Incorporated and Jewett–Cameron Lumber Corporation.

*MEMORANDUM OPINION*

URBINA, District Judge.

**Denying Without Prejudice Motion to Dismiss Sunmatch's Amended Counterclaims Against Jewett–Cameron and MSI–Pro; Granting Sunmatch Discovery on Alter–Ego Issue; Granting Material Supply International's Motion for First–Use and Expert Discovery**

## I. INTRODUCTION

These matters come before the court upon a motion to dismiss the counterclaims asserted by defendant Sunmatch Industrial Company, Limited ("Sunmatch") against MSI–Pro Company, Incorporated ("MSI–Pro") and Jewett–Cameron Lumber Corporation ("Jewett"). Sunmatch has not alleged that MSI–Pro or Jewett wronged Sunmatch or had any contacts with the District of Columbia ("District"). Rather, Sunmatch seeks to impute the jurisdictional contacts of the plaintiff, Material Supply International, Inc. ("MSI") to MSI–Pro and Jewett on the ground that they were MSI's successor and alter-ego, respectively. Because MSI–Pro and Jewett deny that these entities were the alter egos of MSI, they contend that MSI's jurisdictional contacts should not be imputed to them. Accordingly, MSI–Pro and Jewett ask the court to dismiss the counterclaims for lack of personal jurisdiction and for failure to state a claim.

After reviewing Sunmatch's amended counterclaims, the submissions of the parties and the relevant law, the court concludes that the motion to dismiss will be denied without prejudice. For the reasons which follow, Sunmatch shall be afforded discovery bearing on its contention that MSI–Pro and Jewett are the alter egos of MSI. Following discovery, MSI–Pro and Jewett shall file dispositive motions in accordance with the timetable set forth in the attached order.

## II. BACKGROUND

### A. *The Contract and Trademark Disputes between MSI and Sunmatch*

Defendant Sunmatch is a company based in Taipei, Taiwan, that manufactures pneumatic tools under the trademark "Suntech."[1] The plaintiff, MSI, is an Oregon corporation with its principal place of business in Portland which entered into an exclusive licensing agreement with Sunmatch to sell Suntech tools in the United States. The agreement, effective from December 1985 through November 1990, stated that Sunmatch would supply MSI with "Suntech" tools for sale in all of North America and Hawaii. Am. Counterclaim ¶ 93. After marketing and selling Sunmatch's Suntech tools in the U.S. for several years, MSI filed for and obtained registration of the Suntech trademark in October 1991, without Sunmatch's consent or knowledge. *Id.* ¶ 94. Upon discovering this, Sunmatch filed a petition with the Trademark Trial and Appeals Board ("TTAB") to cancel MSI's registration. In March 1994, the TTAB granted summary judgment to Sunmatch and issued Cancellation No. 20,482.

By amended complaint filed in June 1994, MSI sought review of the TTAB's decision and asserted additional causes of action against Sunmatch.[2] Sunmatch answered and asserted counterclaims against MSI in September 1994.

### B. *First Trial on Contract and Trademark Claims between MSI and Sunmatch*

The claims between MSI and Sunmatch were tried in February 1996. The court

affirmed the TTAB and concluded that Sunmatch was the owner of the Suntech trademark, primarily because it found that Sunmatch was the first to use that name. The court therefore dismissed MSI's claims for trademark infringement, common-law unfair competition, injunctive relief and fraud on the Patent and Trademark Office ("PTO"), pursuant to Fed. R.Civ.P. 50(a).

The court presented its conclusion that Sunmatch was the owner of the trademark to the jury and instructed it to deliberate on the remainder of the claims. The jury upheld MSI's claim against Sunmatch for breach of fiduciary duty, for which it awarded MSI $50,000 in compensatory and $100,000 in punitive damages, but it rejected MSI's claims for fraud and breach of contract. The jury upheld Sunmatch's counterclaims for trademark infringement, fraud on the PTO and breach of contract, for which it awarded Sunmatch $908,500. The jury rejected Sunmatch's counterclaims for unfair competition under federal and state law.

This court entered judgment pursuant to these verdicts in March 1996. After considering post-judgment motions, the court issued an opinion and order in May 1997.

### C. *Appeal from First MSI–Sunmatch Trial*

Both MSI and Sunmatch appealed. In July 1998, the Court of Appeals affirmed in part, reversed in part and remanded. *MSI v. Sunmatch,* 146 F.3d 983 (D.C.Cir. 1998). Specifically, the Court affirmed the jury's award of $150,000 to MSI on its

---

1. Sunmatch obtained Taiwanese trademark registration on the "Suntech" name and logo as early as September 1985. Am. Counterclaim, Ex. A.

2. Count I seeks review of the TTAB's decision; Counts II through VIII allege trademark infringement, unfair competition; common-law unfair competition; breach of contract; breach of fiduciary duty; and common-law fraud. Count VII, alleging that Sunmatch

committed fraud on the TTAB, was dismissed with prejudice during trial.

Sunmatch counterclaimed against MSI for federal trademark infringement and unfair competition; fraud on the Patent and Trademark Office; common-law unfair competition; and breach of contract.

By order dated October 2, 1995, the court dismissed plaintiff MSI's claims against defendant Chen in his personal capacity for lack of personal jurisdiction.

claim that Sunmatch breached its fiduciary duty. The Court also affirmed the jury's verdict in favor of Sunmatch on MSI's claims for breach of contract, fraud on the TTAB and fraud on MSI. *See MSI*, 146 F.3d at 994. Conversely, the Court held that this court violated MSI's Seventh Amendment right to a jury trial by deciding who owned the trademark before submitting the other claims to the jury. *See id.* Accordingly, the Court remanded for a new jury trial "of all causes of action that entail the question which party owned the Suntech trademark", namely (1) MSI's challenge to the TTAB decision awarding the trademark to Sunmatch; (2) Sunmatch's claims for breach of contract and fraud on the PTO; and (3) MSI and Sunmatch's claims for trademark infringement and unfair competition under federal and state law. *Id.* at 989. As a result, Sunmatch lost the $908,500 verdict it had won on its claims that MSI committed trademark infringement, fraud on the PTO and breach of contract. Sunmatch gained, however, the opportunity to re-try its unfair-competition claims. Only MSI's $150,000 judgment for breach of fiduciary duty remains intact.

### D. *The Joinder of Counterclaim Defendants MSI–Pro and Jewett–Cameron*

On April 1, 1996, approximately one month after the conclusion of the first trial, plaintiff MSI's parent company, Jewett, incorporated MSI–Pro, Inc., an Oregon corporation importing, distributing and retailing industrial tools. Mot. to Dis., Ex. 1; Mot. to Join MSI–Pro and Jewett filed Sept. 8, 1997 ("Mot. to Join"). On August 9, 1996, MSI merged its operations into MSI–Pro and became an inactive corporation. Mot. to Join, Ex. 2. Sunmatch alleges that MSI transferred all its assets to MSI–Pro, but none of its submissions say so in so many words.

In September 1997, Sunmatch filed a motion to join MSI–Pro and Jewett as counterclaim defendants pursuant to Fed.R.Civ.P. 25(c). This court granted the motion in December 1998.

### E. *Sunmatch's Counterclaims against MSI–Pro and Jewett*

On January 4, 1999, Sunmatch filed an amended counterclaim against MSI–Pro and Jewett. Sunmatch alleged that MSI–Pro and Jewett are jointly and severally liable for MSI's wrongful acts. On February 19, 1999, MSI–Pro and Jewett filed a joint motion to dismiss Sunmatch's counterclaims. They contend that because they are not MSI's alter-egos, the court lacks personal jurisdiction and must dismiss the counterclaims against them.

Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12," Fed.R.Civ.P. 52(a); *Summers v. DOJ*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998), the court nonetheless sets forth its reasoning.

## III. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss for Failure to State a Claim

#### 1. The Standard for Personal Jurisdiction over Nonresident Corporations

MSI–Pro and Jewett move to dismiss Sunmatch's counterclaims on two grounds: lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) and failure to state a claim under Fed.R.Civ.P. 12(b)(6). MSI–Pro and Jewett contend that the court does not have personal jurisdiction over them because neither has sufficient contacts with this jurisdiction. Both MSI–Pro and Jewett are Oregon corporations with their principal places of business in Oregon. District of Columbia law controls the extent to which the court may exercise personal jurisdiction over a nonresident defendant. *See Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir.1987). The District's "long-arm statute" provides that the court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's: (1) transacting any business in

the District. . . ." D.C.Code § 13–423(a)(1). A single act in the District may be enough to constitute "transacting business." *See Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F.Supp. 558, 563 (D.D.C.1981) (citation omitted). Moreover, a defendant need not ever be physically present in the District to "transact business" within the meaning of the statute. *FDIC v. O'Donnell*, 136 B.R. 585, 591 (D.D.C.1991).

The long-arm statute provides for jurisdiction to the fullest extent permissible under the Due Process Clause. *See Fisher v. Bander*, 519 A.2d 162, 163 (D.C.1986). Accordingly, the appropriate inquiry is whether MSI–Pro and Jewett have the requisite "minimum contacts" with the District so that the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Hughes v. A.H. Robins Co., Inc.*, 490 A.2d 1140, 1145 (D.C.1985) (citation omitted). A defendant establishes minimum contacts by purposefully availing himself of the privilege of conducting activities within the forum jurisdiction, thus invoking the benefits and protections of its laws. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The contacts must be such that the non-resident "should reasonably anticipate being haled into court" in the forum jurisdiction. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

MSI–Pro and Jewett are affiliated with MSI. Ordinarily, a corporation's contacts with a forum may not be attributed to affiliated corporations. *See Shapiro*, 24 F.Supp.2d at 70. An exception exists, however, when the party which contests jurisdiction is an "alter ego" of an affiliated party over which the court has uncontested jurisdiction; in that case the affiliated corporation's jurisdictional contacts may be imputed to the party. *See Chase v. Pan–Pacific Broadcasting*, 617 F.Supp. 1414, 1425 (D.D.C.1985). Accordingly, Sunmatch may demonstrate jurisdiction over MSI–Pro and Jewett by proving that they are alter egos of MSI.

If Sunmatch does not prove that MSI–Pro and Jewett are alter-egos of MSI, it could establish jurisdiction only by presenting evidence of MSI–Pro and Jewett's own individual contacts with the District. *See Shapiro*, 24 F.Supp.2d at 70. But Sunmatch has not alleged that MSI–Pro and Jewett have any contacts with the District. Consequently, if Sunmatch does not prove that MSI–Pro and Jewett are MSI's alter egos, its counterclaims may be dismissed as to MSI–Pro and Jewett for lack of personal jurisdiction *and* for failure to state a claim.

### 2. Deciding Personal Jurisdiction on a Motion to Dismiss

To survive a motion to dismiss for lack of personal jurisdiction, the non-movant need only make out a prima facie case that such jurisdiction exists. *See Crane v. New York Zoological Society*, 894 F.2d 454, 458 (D.C.Cir.1990). For purposes of this motion to dismiss, Sunmatch's well-pleaded allegations are regarded as true, *see Gray v. Bell*, 712 F.2d 490, 493 n. 2 (D.C.Cir.1983) and it is afforded the benefit of all inferences reasonably derived from the facts alleged. *See United States v. BCCI Holdings*, 980 F.Supp. 21, 26 (D.D.C.1997) (citation omitted). Dismissal is proper only if "it appears beyond doubt that the [counterclaimant] can prove no set of facts in support of his claim which would entitle him to relief." *Kenneda v. United States*, 880 F.2d 1439, 1442 (D.C.Cir.1989). "Conclusory allegations or legal conclusions masquerading as factual conclusions," however, "will not suffice to prevent a motion to dismiss." 2 Moore's Federal Practice, s. 12.34[1][b] at 12–61 to 12–62.

### 3. Determining Whether Jewett is MSI's Alter–Ego

i. *Standard for Determining Whether Subsidiary is Alter–Ego of Parent Corporation*

Whether one corporation is the alter ego of another is a question of law to

be decided by the court. *See Joyce v. Silveri Tile Co.*, 27 F.Supp.2d 251, 256 (D.D.C.1998) (citation omitted). The courts have applied four tests to determine whether a parent corporation is liable for the acts of its subsidiary:

(1) **the "agency" test,** which asks whether the parent exercises a significant degree of control over the subsidiary's decisionmaking;

(2) **the "alter ego" test,** which permits the court to pierce the corporate veil when necessary to prevent fraud, illegality or injustice;

(3) **the "instrumentality" test,** which asks whether the parent exercised extensive control over the wrongful acts of the subsidiary; and

(4) **the "integrated enterprise" test,** which considers interrelation of operations, centralized control of labor relations, common management and ownership or financial control.

*Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 61 (D.D.C.1996) (citation omitted). All four tests are ultimately concerned with resolving the same question: whether the parent corporation "so dominated the [subsidiary] corporation as to negate its separate personality." *Hart v. Department of Agriculture,* 112 F.3d 1228, 1231 (D.C.Cir.1997) (citation omitted). The court must undertake a two-pronged analysis to determine whether MSI retained a corporate personality distinct from Jewett's: (1) whether there is "such unity of interest and ownership that the separate personalities of [MSI] and [Jewett] no longer exist"; and (2) whether an inequitable result will follow if the court treats MSI's allegedly wrongful acts as those of MSI alone. *Smith v. Washington Sheraton Corp.,* 135 F.3d 779, 786 (D.C.Cir.1998); *Camacho v. 1440 Rhode Island Ave. Corp.,* 620 A.2d 242, 249 (D.C. 1993).

■ To show the requisite unity of interest and ownership, Sunmatch must show that Jewett's control over MSI is "active and substantial", but the control "need not be exclusive in a hypertechnical or day-to-day sense." *Valley Finance,* 629 F.2d at 172. The test is a practical one, based on a reading of the circumstances. *Id.* To assess whether there is a unity of interest and ownership, the court may consider the nature of the corporate ownership and control; failure to maintain corporate minutes or records; failure to maintain corporate formalities; commingling of funds and assets; diversion of one corporation's funds to the other's uses; and use of the same office or business location. *Labadie Coal Co. v. Black,* 672 F.2d 92, 97–99 (C.A.D.C.1982).

■ **Subsidiary as Mere Instrumentality of Parent.** The fact that MSI is owned solely by Jewett "is not by itself sufficient" to show the two are alter egos, "although it is certainly not irrelevant." *Valley Finance,* 629 F.2d at 172. Rather, to assess whether Jewett so controlled MSI as to render it a mere instrumentality, the court will consider a host of factors, none of which is dispositive: whether parent and subsidiary have common business departments; whether the parent finances the subsidiary; whether the parent incorporated the subsidiary; whether the subsidiary is inadequately capitalized; whether parent and subsidiary file consolidated financial statements and tax returns; whether they have a joint accounting and payroll system; whether the subsidiary is operated as a mere division of the parent; whether the subsidiary depends on the parent for substantially all of its business; whether the subsidiary's obligations are assumed to be those of the parent; whether the subsidiary's property is used by the parent as its own; and whether the subsidiary is operated exclusively in the interest of the parent. *Bulletin Broadfaxing Network, Inc. v. Times Mirror Co.,* 1992 WL 121477, *5 (D.D.C.1992).

■ By contrast, it is not relevant that the parent ultimately benefitted from the activities of the subsidiary or that the subsidiary's supervisors reported to the par-

ent's officers. *Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 62–63 (D.D.C.1996).

■ **Subsidiary as Agent.** Sunmatch may also show that MSI is Jewett's alter-ego if it can show that MSI was simply Jewett's agent. *See First Chicago Int'l. v. United Exchange Co.*, 836 F.2d 1375, 1378–79 (D.C.Cir.1988). Bare allegations of agency, of course, are insufficient. *See Sunlite, Inc. v. BfG Bank AG*, 849 F.Supp. 74, 76 (D.D.C.1994). Nor is agency established by showing merely that parent and subsidiary are in the same business and have worked together in the past. *See El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.D.C.Cir.1996).

■ Sunmatch may establish agency by demonstrating first that Jewett's ownership of MSI was not "a mere investment", but rather "an alternative means of transacting business by the parent corporation." *Caribe Trailer Systems, Inc. v. Puerto Rico Maritime Shipping Authority*, 475 F.Supp. 711, 718 (D.D.C.1979). *See, e.g., Ramamurti v. Rolls–Royce, Ltd.*, 454 F.Supp. 407, 408–411 (D.D.C.1978), *aff'd*, 612 F.2d 587 (D.C.Cir.1980) (although Rolls–Royce had no contacts with the District, the court exercised jurisdiction over it by virtue of its subsidiary RRI's undisputed contacts with the District, since RRI's business consisted solely of providing marketing information and service support for engines manufactured and sold by Rolls–Royce).

The plaintiffs in *Ramamurti* showed not only that RRI was Rolls–Royce's agent, but specifically that it was Rolls–Royce's agent with respect to the matter for which Rolls–Royce was haled into court: its manufacture and sale of an allegedly defective airplane engine. *Ramamurti*, 454 F.Supp. 407. Likewise, it is not enough for Sunmatch to show that MSI was Jewett's agent in some general sense. Sunmatch must show that MSI was Jewett's agent *with respect to MSI's allegedly wrongful acts against Sunmatch. See Caribe Trailer Systems*, 475 F.Supp. at 718.

**Equitable Considerations in Piercing the Corporate Veil.** Proof that MSI was Jewett's agent or instrumentality demonstrates "unity of interest and ownership", the first of the two criteria for "domination" which "negates [MSI's] separate personality." *Hart*, 112 F.3d at 1231. Sunmatch must next show that it would be inequitable to treat MSI's allegedly wrongful acts as those of MSI alone. *Labadie Coal Co.*, 672 F.2d at 96.

■ A corporate entity may be disregarded in the interest of public convenience, fairness and equity. *See, e.g., Capital Telephone Co. v. FCC*, 498 F.2d 734, 738 (D.C.Cir.1974) (where both corporation and owner applied for radio paging channels, FCC properly pierced veil and granted only one application on behalf of both). In short, once unity of interest and ownership is shown, equity counsels piercing the veil whenever "adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Shapiro, Lifschitz v. Hazard*, 24 F.Supp.2d 66, 70 n. 3 (D.D.C.1998) (citation omitted). *See also Bingham v. Goldberg, Marchesano*, 637 A.2d 81, 93 (D.C.1994).

#### ii. *Evidence Presented that Jewett is MSI's Alter Ego*

■ Thus far, Sunmatch has offered little detailed evidence in support of its contention that Jewett is MSI's alter ego. Sunmatch relies on the fact that MSI is a wholly-owned subsidiary of Jewett and has the same President, Secretary–Treasurer, address and registered agent as Jewett. Opp. to Mot. to Dis. at 10; Am. Counterclaim ¶¶ 77–8. The existence of common officers is relevant to the alter ego analysis, but Sunmatch must also show that those officers actually helped Jewett control MSI. Under the instrumentality theory,

> [C]ontrol of one corporation by another is a necessary element and ... the control must be a proximate cause of the alleged injustice at issue. Moreover, the control must not be merely theoretical.

For instance, majority ownership is not enough, nor is it enough that the directors and officers of the principal are also directors and officers of the alleged "instrumentality." Rather, the theoretical control must be so exercised that the prime function of one corporation is but to serve the other.

*In re Washington Medical Center, Inc.,* 10 B.R. 616, 622 (Bankr.D.C.1981) (citation omitted). Sunmatch does assert that Jewett President Boone "has always made the ultimate business and financial decisions for MSI and did so even before he assumed the presidency of MSI." Am. Counterclaim ¶ 81. The only support offered for this assertion, however, is Sunmatch's claim that "counsel for MSI stated on several occasions that he was primarily serving as an agent for Jewett–Cameron, and its president, Donald Boone." *Id.* Sunmatch has not yet identified the "counsel for MSI" who allegedly made this statement or when he did so. Lastly, Sunmatch argues that Jewett's domination of MSI is evidenced by the fact that Jewett dissolved MSI and ordered the transfer of its assets to a new corporation, MSI–Pro. Opp. to Mot. to Dis. at 10–11.

For its part, Jewett generally assails the paucity of Sunmatch's evidence and points out that it is in a different line of business from MSI: Jewett supplies lumber and "value-added building materials", while MSI imported and sold power tools and equipment. Nasser Affidavit re: Jewett ¶¶ 3–4; Am. Counterclaim ¶ 87. Jewett notes that Sunmatch has not tried to rebut its affidavit stating that it "has never been 'involved in any way in the importation, distribution or sale of products bearing the Suntech trademark nor ever claimed ownership or rights relating to the Suntech trademark.'" Reply in Support of Mot. to Dis. at 4.

This relatively meager record does not enable the court to make a well-informed assessment of the true relationship between MSI and Jewett. First, under District of Columbia law, the fact that Jewett owns MSI is relevant, but not dispositive. "Courts have uniformly held that stock ownership and shared corporate officers and directors is insufficient as a matter of law to meet the mere instrumentality test." *Bulletin Broadfaxing v. Times Mirror Co.,* 1992 WL 121477, *7 (D.D.C. 1992) (citation omitted). To demonstrate that MSI is the alter ego of Jewett, Sunmatch will need to address other factors under the instrumentality or agency tests. Neither party has proffered evidence, for instance, showing whether MSI and Jewett had common business departments; whether Jewett financed MSI; whether MSI was inadequately capitalized; whether MSI and Jewett filed joint financial statements and tax returns or had a joint accounting and payroll system; whether MSI was operated as a mere division of Jewett; whether MSI depended on Jewett for substantially all of its business; whether MSI's obligations were assumed to be Jewett's; whether MSI's property was used by Jewett as its own; and whether MSI was operated exclusively in Jewett's interests. *See Bulletin Broadfaxing,* 1992 WL 121477 at *5.

### iii. *Limited Discovery is Needed to Determine Whether MSI was Jewett's Alter Ego*

The court is wary of dismissing Jewett, however, since Sunmatch has not had an opportunity to obtain information from Jewett and MSI about their relationship. Without affording Sunmatch that opportunity, the court cannot ascertain whether Sunmatch's failure to produce more persuasive evidence on that relationship is due to a lack of discovery or a lack of evidence. *Cf. El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 676 (D.C.Cir.1996) ("[e]ven though El–Fadl's present jurisdictional allegations are insufficient, he has sufficiently demonstrated that it is possible that he could supplement them through discovery"); *Sargent v. McGrath,* 685 F.Supp. 1087, 1090 (E.D.Wis.1988) ("even the rather weak showing of a connection in

labor relations between the two corporations raises a genuine issue of material fact for trial with respect to the nature and extent" of the relationship between parent and subsidiary).

Accordingly, the court denies the motion to dismiss, but without prejudice. Sunmatch shall be entitled to conduct discovery on the alter-ego issue as specified in the order accompanying this opinion. Following discovery, MSI–Pro and Jewett will be entitled to file motions seeking summary judgment for lack of personal jurisdiction.

This procedure is consistent with the practice of courts in this Circuit. Our courts have ordered discovery to illuminate alter ego disputes before deciding dispositive motions which asserted lack of jurisdiction over the alleged alter ego. *United Mine Workers v. Arch Mineral Corp.,* 145 F.R.D. 3 (D.D.C.1992); *Richard v. Bell Atlantic,* 946 F.Supp. 54 (D.D.C. 1996). *Cf. Labadie Coal Co. v. Black,* 672 F.2d 92, 98 (D.C.Cir.1982) (vacating decision not to pierce veil and ordering discovery which might show commingling of funds of corporation and individual).

### 4. Determining Whether MSI–Pro is MSI's Alter Ego

#### i. *Standard for Determining Whether One Corporation is Another Corporation's Successor*

■ Sunmatch contends that MSI–Pro is the successor to MSI. *See* Opp. to Mot. to Dis. at 11–13. Under District of Columbia law, a successor corporation is not liable for the wrongs of its predecessor, with four well-recognized traditional exceptions:

[A] corporation which acquires all or part of the assets of another corporation does not acquire the liabilities and debts of the predecessor, unless: (1) there is an express or implied agreement to assume the liabilities; (2) the transaction amounts to a consolidation or merger; (3) the successor entity is a mere continuation or reincarnation of the predecessor entity; or (4) the transaction was fraudulent, not made in good faith, or made without sufficient consideration.[3]

*Bingham v. Goldberg, Marchesano,* 637 A.2d 81, 89–90 (D.C.1994) (citations omitted).

■ **First Exception—Agreement to Assume Liabilities.** Sunmatch has not alleged that MSI–Pro agreed to assume MSI's liabilities. To invoke the first exception on an *implied*-agreement theory, Sunmatch must do more than show that MSI–Pro serves MSI's former customers. *See LeSane,* 791 F.Supp. at 875.

■ **Second and Third Exceptions— Consolidation, Merger or Continuation.** To decide whether a consolidation or merger has rendered a corporation a "mere continuation" of its predecessor, the court considers whether the two have common officers and stockholders; whether the two are in the same line of business; and whether sufficient consideration was paid for the predecessor's assets. *Bingham,* 637 A.2d at 91–92; *see also LeSane,* 791 F.Supp. at 875.

■ The transferee corporation will also be found to be a continuation of the predecessor if the predecessor ceases to exist after the transaction. *See Minnesota Mining & Manu. v. Eco Chem,* 757 F.2d 1256, 1262 (Fed.Cir.1985). Even if the predecessor retains a nominal existence, continuation will be found where it *effectively* ceased to exist as an active corporation. *Colonial Ice Cream Co. v. Southland*

---

**3.** A minority of jurisdictions recognize two more exceptions to the rule of successor nonliability: the "continuity of enterprise" exception and the "productline" exception. The District of Columbia courts have not addressed whether they recognize these fifth and sixth exceptions. This court, however, has suggested that the District would follow Maryland in rejecting these two exceptions. *LeSane v. Hillenbrand Indus.,* 791 F.Supp. 871, 874 (D.D.C.1992) (Harris, U.S.D.J.). *See also Rivas v. District Int'l Trucks,* 1989 WL 117871 (D.D.C. Oct.5, 1989) (refusing to apply product-line exception).

*Ice,* 53 F.2d 932, 933–34 (C.A.D.C. 1931) (where one company sold all its assets, "sale" was no more than a continuation of the seller's business under a new name and the seller's creditor could follow its assets to the buyer).

### ii. *Evidence Presented that MSI–Pro is MSI's Successor*

■ In support of its contention that MSI–Pro is MSI's successor, Sunmatch points to the fact that the two corporations have the same President and the same address. Am. Counterclaim ¶ 86. Sunmatch also alludes to "common directors and officers", but does not specify who they are. Sunmatch relies more heavily, however, on the nature and timing of MSI's "dissolution" in April 1996. *Id.* ¶ 83. Whether or not "dissolution" is the appropriate term, Sunmatch *has* presented evidence that MSI merged its operations into those of MSI–Pro and became an inactive corporation on August 9, 1996. Mot. to Join, Ex. 2. Moreover, MSI–Pro was incorporated in April 1996, shortly before its merger with MSI. Accordingly, Sunmatch alleges that the merger was carried out to ensure that MSI had no assets to satisfy this court's March 1996 judgment against it. Am. Counterclaim ¶ 83. The timing of MSI–Pro's incorporation and MSI's inactivation is inconclusive proof that MSI–Pro was created to defeat the judgment, but it is consistent with Sunmatch's suspicion on that score.

A persuasive indication that MSI merged with MSI–Pro to defeat enforcement of judgment would show much to support the contention that MSI–Pro is MSI's successor. *See Valley Finance v. United States,* 629 F.2d 162, 172 (D.C.Cir. 1980) (evidence of fraudulent intent is probative in determining whether one corporation is alter ego of another) (citation omitted).

### iii. *Limited Discovery is Needed to Determine Whether MSI–Pro is MSI's Successor*

■ As with the MSI–Jewett relationship, additional information will enable the court to make a more educated determination of whether MSI–Pro is MSI's successor. Significantly, MSI–Pro has not disputed Sunmatch's contention that it received substantially all of MSI's assets. *Cf. Richard v. Bell Atlantic,* 946 F.Supp. 54, 65 (D.D.C.1996) ("Although the plaintiffs have offered no admissible evidence in support of this assertion [that every new hire and applicant for promotion at the subsidiary was subject to a uniform test developed by the parent], the defendants have not contested it, suggesting to the Court" that the assertion might be true). If the asset transfer took place, there is a real possibility that it rendered MSI incapable of satisfying any judgment. The need to avoid such an inequitable outcome reinforces the need for discovery as to MSI's relationship with MSI–Pro.

For the foregoing reasons, Sunmatch shall be permitted to conduct limited discovery on the nature and extent of the MSI/MSI–Pro relationship as set forth in the attached order.

### B. Plaintiff MSI's Unrelated Motion for Additional Limited Discovery

On October 26, 1998, plaintiff MSI filed a motion seeking discovery regarding documents on which Sunmatch may rely for its claim that it was the first to use the Suntech trademark in the United States. MSI also seeks discovery of any expert witness on whom Sunmatch may rely at retrial. The motion is granted, subject to the conditions set forth in the attached order. *See Edmond v. United States Postal Service Gen. Counsel,* 949 F.2d 415, 425 (D.C.Cir.1991) ("As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted . . . ."); Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, . . . .").