Monique JOHNSON–TANNER, Plaintiff,

v.

**FIRST CASH FINANCIAL SERVICES, INC., and Famous Pawn, Inc. Defendants.**

No. CIV.A.01–718 PLF.

United States District Court, District of Columbia.

Jan. 2, 2003.

Michael G. Kane, Meredith S. Francis, Cashdan, Golden & Kane, P.L.L.C., Washington, DC, for plaintiff.

Joseph Yenouskas, Douglas P. Lobel, Morgan, Lewis & Bockius, McLean, VA, for defendants.

## OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This action was filed under 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, seeking injunctive relief and monetary damages for allegedly unlawful employment discrimination based on race. Plaintiff alleges that First Cash Financial Services, Inc. and its wholly owned subsidiary, Famous Pawn, Inc., refused to laterally transfer the plaintiff, allegedly causing her constructive discharge. This matter comes before the Court on defendants' motions to dismiss for lack of personal jurisdiction, improper venue and failure to state a claim.[1] For the reasons that fol-

---

**1.** First Cash's motion to dismiss includes defenses under Rules 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure. Famous Pawn's motion to dismiss does not raise the Rule 12(b)(2) lack of personal jurisdiction defense. Given the similar nature of the defendants' separately filed motions for dismissal, the Court will address both motions together.

low, this Court denies defendants' motions to dismiss.

## I. BACKGROUND

From June 1997 to September 1998, plaintiff Monique Johnson–Tanner, a resident of the District of Columbia and an African American female, was employed as a salesperson by First Cash and/or by Famous Pawn. Plaintiff was originally hired to work at a pawn shop in Georgetown in the District of Columbia but, after several transfers, she ended up working at a Silver Spring, Maryland pawn shop. After being twice denied a transfer back to the Georgetown store, allegedly because of her race, plaintiff filed her Amended Complaint on May 8, 2001.

First Cash is a Delaware Corporation with its principal place of business in Arlington, Texas. Famous Pawn is a Maryland Corporation that operates pawn shops in Maryland, Virginia and the District of Columbia. First Cash previously was the subject of a similar employment discrimination suit, the testimony from which plaintiff relies on heavily in the instant case.[2]

## II. PERSONAL JURISDICTION

■■■ District of Columbia law controls the extent to which the Court may exercise personal jurisdiction over a nonresident defendant. *See Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir.1987). D.C.Code Section 13–423(a)(1) provides that the Court "may exercise personal jurisdiction over a person, who acts directly or as an agent, as to a claim for relief arising from the person's ... transacting any business in the District of Columbia." This long-arm provision allows for jurisdiction to the fullest extent permissible under the Due Process Clause of the United States Constitution.

*See Crane v. New York Zoological Soc'y*, 894 F.2d 454, 455 (D.C.Cir.1990). Due Process is satisfied where a defendant has "minimum contacts" with the District of Columbia such that the exercise of personal jurisdiction will not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Such minimum contacts are established where a defendant "purposefully avails" itself of the privilege of conducting activities within the forum jurisdiction such that the defendant "should reasonably anticipate being haled into court" there. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The plaintiff bears the burden of proving a *prima facie* case of personal jurisdiction by alleging specific acts linking a defendant with the forum. *See Crane v. New York Zoological Soc'y*, 894 F.2d at 456; *United States v. Philip Morris, Inc.*, 116 F.Supp.2d 116, 121 (D.D.C.2000). In deciding whether a basis for personal jurisdiction exists, factual discrepancies in the record must be resolved in the plaintiff's favor. *See United States v. Philip Morris, Inc.*, 116 F.Supp.2d at 121.

In an effort to establish that First Cash transacts business in the District of Columbia and possesses the necessary minimum contacts, plaintiff lists numerous facts indicating that Famous Pawn is "not its own business, but that of the parent corporation [First Cash]." Plaintiff's Opposition at 6 ("Pl.Opp."). In opposition, First Cash argues that it and Famous Pawn are in fact separate companies maintaining all corporate formalities. First Cash further states that it owns no property in the District of Columbia, is not licensed to do

---

**2.** *See Williams v. First Cash, Inc.*, Civ. Action 98–3567 (D.C. Superior Court 1998).

business in the District and transacts no business in the District. This Court finds no genuinely separate identity between First Cash and Famous Pawn, and the Court therefore has personal jurisdiction over First Cash (not just over Famous Pawn).

## A. Alter Ego Analysis

Ordinarily, a defendant corporation's contacts with a forum may not be attributed to affiliated corporations. *See El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 675–76 (D.C.Cir.1996); *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F.Supp.2d 15, 22 (D.D.C.2000); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F.Supp.2d 13, 19 (D.D.C.1999). An exception exists, however, when the party contesting jurisdiction is found to be nothing more than the alter ego of an affiliated corporation over which the court does have jurisdiction; in that case the affiliated corporation's jurisdictional contacts may be extended to reach the other corporate entity. *See El–Fadl v. Central Bank of Jordan*, 75 F.3d at 676 ("if parent and subsidiary 'are not really separate entities,' ... or one acts as an agent of the other, ... the local subsidiary's contacts can be imputed to the foreign parent"); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F.Supp.2d at 20 (same, where parent corporation so dominates subsidiary as "to negate its separate personality"). "In such cases, the foreign parent will be found to be transacting business in the forum state through the activities of its subsidiary." *Color Sys., Inc. v. Meteor Photo Reprographic Sys., Inc.*, 1987 WL 11085, *4 (D.D.C.1987). Whether one corporation is the alter ego of another is a question of law to be decided by the court. *See Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F.Supp.2d at 22; *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F.Supp.2d at 19–20.

The defendants concede that the Court has personal jurisdiction over Famous Pawn which admittedly operates pawn shops in the District of Columbia. The question is whether the Court also has personal jurisdiction over First Cash as the alter ego of Famous Pawn. To determine whether Famous Pawn is a separate corporate entity distinct from First Cash or merely the alter ego of First Cash, the Court must evaluate: (1) whether there is such a unity of interest and ownership that the separate personalities of First Cash and Famous Pawn effectively no longer exist; and (2) whether an inequitable result would follow if the Court treats Famous Pawn's allegedly wrongful acts as those of Famous Pawn alone and not also those of First Cash. *See Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F.Supp.2d at 23; *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F.Supp.2d at 20. Ultimately, the question is whether the parent corporation "so dominated the [subsidiary] corporation as to negate its separate personality," making the exercise of jurisdiction over the absent parent fair and equitable. *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F.Supp.2d at 20 (*quoting Hart v. Department of Agriculture*, 112 F.3d 1228, 1231 (D.C.Cir.1997)).

### 1. Unity of Interest and Ownership

Unity of interest is established if First Cash had active and substantial control of Famous Pawn at the time of the alleged racial discrimination, *see Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F.supp.2d at 23, but this control does not have to amount to actual day-to-day control or supervision. *See Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 62 F.Supp.2d at 20. Among the factors the Court is to consider in making this determination are whether there was a failure to maintain separate corporate minutes or

records; a failure to maintain corporate formalities; a commingling of funds or other assets; a diversion of one corporation's funds to the other's uses; the use of the same office or business location; and/or a joint accounting and payroll system. *Id.* It is also relevant whether the subsidiary is operated as a mere division of the parent and/or whether the subsidiary is operated exclusively in the interest of the parent. *See id.* The transfer of personnel back and forth between the parent corporation and its subsidiary or affiliate is another relevant factor. *See Color Sys., Inc. v. Meteor Photo Reprographic Sys., Inc.,* 1987 WL 11085 at *5. In this case, a number of these factors lead the Court to conclude that there is sufficient unity of interest and ownership to blur any distinction between the two companies' respective personalities and to permit the Court reasonably to exercise personal jurisdiction over First Cash Financial Services.

First, First Cash and Famous Pawn share at least three key common officers and directors: Rick Powell, Alan Barron and Rick Wessel. *See* Pl. Opp., Exhibit 22, First Cash Responses to Plaintiff's Interrogatories at 6, 8.[3] Rick Powell is both Chairman/CEO of First Cash and a Director of Famous Pawn. Alan Barron serves as the Chief Operating Officer of First Cash and as the President of Famous Pawn. Rick Wessel handles the duties of Chief Financial Officer for both First Cash and Famous Pawn; he also fills the roles of Director, Secretary and Treasurer of First Cash. Sharing officers between the parent and the subsidiary or the presence of "interlocking directorates" are indicative of common corporate ownership and control. *See Color Sys., Inc. v. Meteor*

*Photo Reprographic Sys., Inc.,* 1987 WL 11085 at **5, 6 (finding alter ego test satisfied in part where parent and subsidiary shared two of three members of board of directors and where one co-manager of parent was also president of subsidiary); *Shapiro, Lifschitz & Schram, P.C. v. Hazard,* 90 F.Supp.2d at 26 (suggesting operational nexus where two seemingly separate construction-related companies shared the sole employee of one of the companies); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 62 F.Supp.2d at 22 (strong evidence of control where president of parent makes all final business and financial decisions regarding subsidiary).

Second, according to Rick Wessel, none of the common executives/directors maintains separate phone or fax lines for their respective dual roles. *See* Exhibit 19, September 21, 2001 Deposition of Rick Wessel at 127–28 ("Wessel Dep"). This is another indicator that there is a unity of interest and operations. *See Shapiro, Lifschitz & Schram, P.C. v. Hazard,* 90 F.Supp.2d at 26 n. 11 (undifferentiated use of office equipment such as phones, faxes, copiers and computers by dual employees is relevant factor in assessing nature of corporate ownership and control).

Third, the joint executives/directors listed above ordered the transfer of at least one employee, Chris Lee, from First Cash in Texas to the Washington, D.C. metropolitan region to serve as First Cash or Famous Pawn's Regional Vice President, with responsibility for overseeing District of Columbia stores. *See* Wessel Dep. at 24; Exhibit 9, 2001 Deposition of Chris Lee at 32. The only stores in the District of Columbia, it should be noted, were Famous Pawn shops.[4] As First Cash's Re-

---

**3.** Unless otherwise noted, all exhibits cited herein are Exhibits to Plaintiff's Opposition to Defendants' Motion to Dismiss.

**4.** Lee, who testified that he was employed by First Cash during his 1998 deposition in *Williams v. First Cash, Inc.,* now states that he erroneously labeled himself a First Cash

gional Vice President, Lee had responsibility for store operations in Washington, D.C., which included the responsibility to terminate employees from District of Columbia—that is, Famous Pawn—stores. See Exhibit 8, 1998 Deposition of Chris Lee at 16–17. One of the employees whom Lee terminated was Cynthia Williams, who worked in a pawn shop located in Georgetown. Id.

Another employee, Karie McBride, testified that she was hired as First Cash's Regional Human Resource Director by Scott Williamson, a First Cash Senior Vice President who subsequently served as McBride's supervisor. In this position, McBride had hiring authority, which she exercised during visits to District of Columbia stores. See Exhibit 11, 1998 McBride Deposition at 7–8, 13 ("McBride Dep. I"); Exhibit 34, McBride Trial Testimony at 3. This statement was made during McBride's deposition in Williams v. First Cash, Inc. During McBride's deposition three years later in the instant case, Ms. McBride claimed to have mistakenly identified herself as a First Cash employee during her Williams deposition, and testified that she—like Chris Lee—was in fact a Famous Pawn employee. See First Cash's Reply at 13. If McBride was actually a Famous Pawn employee, hired and supervised by a First Cash employee, this only further demonstrates First Cash's exercise of management control and authority over Famous Pawn employees.

Since the primary focus of the alter ego analysis is to ascertain whether the parent corporation "so dominated the [subsidiary] corporation as to negate its separate personality," see Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 62

F.Supp.2d at 20, First Cash's control of Famous Pawn supervisory employees and its high degree of oversight and management activity—including the hiring and firing of First Pawn employees—is an extremely relevant factor, independent of the actual sharing of officers. See Color Sys., Inc. v. Meteor Photo Reprographic Sys., Inc., 1987 WL 11085 at *5 (transfer of personnel between parent and subsidiary is factor for consideration); cf. Richard v. Bell Atlantic Corp., Inc., 976 F.Supp. 40, 44, 47–48 (D.D.C.1997) (common management of human resources functions probative of whether parent controls employment decisions of subsidiaries; evidence of " 'consultative involvement' with respect to decisions concerning hiring, promotion, evaluation, work assignments, training, and discharge" of subsidiary's employees also relevant factor).

Fourth, according to Ms. McBride, First Cash headquarters in Arlington, Texas inputs, stores and maintains nearly all records concerning Famous Pawn employees, including those employed in the District of Columbia. See McBride Dep. I at 16–17; see also Wessel Dep. at 66–67, 87. These personnel files include employment applications, performance reviews, background checks, separation (termination) forms—all of which are supplied by First Cash directly—and information on employee demographics. See Exhibit 12, 2001 McBride Deposition at 135, 156–57, 161–62 ("McBride Dep. II"). Ms. McBride forwarded some of the human resources materials to First Cash in Texas for processing and storage and regularly contacted the First Cash employee in charge of payroll, Phyllis Christian, in order to gain access to the information contained in the

---

employee when in fact he worked for Famous Pawn. See First Cash's Reply in Support of its Motion to Dismiss for Lack of Personal Jurisdiction at 12–13 ("First Cash's Reply"). If

this is true, this only provides further evidence that at least one employee was transferred between the parent and the subsidiary.

personnel files. *See id.* at 158, 180–81; McBride Dep. I at 16–17. In addition, the First Cash job application telephone hotline and the employment page on the First Cash website—both advertised at the Georgetown Famous Pawn shop—put prospective employees in touch with John Hamilton, the First Cash human resources recruiter. *See* Exhibit 43, Affidavit of Michael Marra ¶¶ 3–5.

Fifth, First Cash and Famous Pawn also maintain joint payroll and accounting systems. *See* Wessel Dep. at 90–91, 110. Employees at First Cash's Texas headquarters provide "accounting [services], payroll processing, accounts payable processing [and] financial statement generation" for Famous Pawn's District of Columbia stores. *Id.* at 110. In fact, Famous Pawn pay stubs bear the name of First Cash along with its Texas address. *See, e.g.,* Exhibit 31 (Monique Tanner Pay Stub). First Cash also supplies Famous Pawn with income tax services, including processing "of Famous Pawn's property taxes, . . . sales tax payments and state income tax filings." *Id.* Health benefits, 401(k) account administration, worker's compensation insurance, an integrated computer network, computer support and e-mail services also are provided by First Cash to Famous Pawn and First Cash's other subsidiaries. *See* Wessel Dep at 44, 47–48, 68, 91, 112.

Although First Cash asserts that these services are provided through contract, there is no evidence that First Cash bills Famous Pawn directly for these services. It appears that First Cash merely calculates an amount owed by Famous Pawn based upon Famous Pawn's revenues vis-à-vis the total revenues from the First Cash family of companies and then simply deducts that amount from Famous Pawn accounts—another indicator of a unity of interest, ownership and control. *See Sha-*

*piro, Lifschitz & Schram, P.C. v. Hazard,* 90 F.Supp.2d at 24 (unity of financial transactions and no written documentation showing separate corporate identities when monetary exchanges are at issue important factors); *cf. MCI Communications Corp. v. American Tel. & Tel. Co.,* 1983 WL 1881, **10, 12–13 (D.D.C.1983) (common employee insurance and stock benefit plans are factors for consideration in analysis of transacting business venue provision).

Based on all of these factors, the Court concludes that First Cash exercised a sufficient degree of control over Famous Pawn and there was a sufficiently clear unity of interest and ownership that the two companies cannot be treated as separate and distinct corporate identities. This Court therefore may exercise personal jurisdiction over First Cash as well as Famous Pawn.

### 2. *Inequitable Result*

This Court finds that it would create an injustice to permit First Cash to escape the consequences of its substantial connection to Famous Pawn's employment practices and procedures in the District of Columbia. It is evident from the record that there is a unity of interest between the two entities. First Cash has sufficient ownership and control over all aspects of Famous Pawn's business to establish that First Cash is transacting business in the District of Columbia, and thus to satisfy the minimum contacts requirement for personal jurisdiction. *See International Shoe Co. v. Washington,* 326 U.S. at 316, 66 S.Ct. 154. There is nothing unfair or inequitable in treating the wrongful acts of Famous Pawn (if proven) as those of First Cash as well. *Shapiro, Lifschitz & Schram, P.C. v. Hazard,* 90 F.Supp.2d at 26.

### III. VENUE

██ Defendants also argue that venue is improper in this district. Under 28 U.S.C. § 1391(b)(1), this district is an appropriate venue if both First Cash and Famous Pawn reside here. As corporations, defendants are "deemed to reside in any judicial district in which [they are] subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Famous Pawn has never contested personal jurisdiction because it operates pawn shops in the District of Columbia. As discussed above, the Court finds that First Cash is subject to personal jurisdiction under the D.C. long-arm statute by virtue of its inextricable links to and control over Famous Pawn. Thus, venue is proper in this district under 28 U.S.C. § 1391(b)(1).

### IV. FAILURE TO STATE A CLAIM

Plaintiff brings her claim under 42 U.S.C. § 1981, which prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants argue that plaintiff has failed to state a claim because she has not alleged an adverse employment action in her complaint, an essential element of a *prima facie* case of employment discrimination. *See, e.g., Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir.1999).

██ Defendants' argument is of no avail. This Court need not determine at this stage whether the denial of plaintiff's lateral transfer constitutes an adverse action. More to the point, plaintiff is not required to allege an adverse action in her complaint. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, plaintiff's complaint need only contain a short and plain statement of the claim and the grounds on which it is based, and need not plead law or match facts with each element of a legal theory. Therefore, a complaint may be dismissed for failure to state claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Furthermore, in deciding a motion to dismiss, the Court must accept plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor. *Glymph v. District of Columbia*, 180 F.Supp.2d 111, 114 (D.D.C.2001). While plaintiff ultimately has the burden of proving a *prima facie* case in an employment discrimination case, she "is not required to set forth the elements of a prima facie case at the initial pleading stage." *Glymph v. District of Columbia*, 180 F.Supp.2d at 114; *see Sparrow v. United Air Lines, Inc.*, 216 F.3d at 1114 ("[n]one of this, however, has to be accomplished in the complaint itself.").

██ Furthermore, Count I of plaintiff's First Amended Complaint expressly states: "First Cash/Famous Pawn's refusal to transfer Ms. Johnson–Tanner on the basis of her race constituted a violation of her rights under 42 U.S.C. Section 1981 and caused her to be constructively discharged." First Amended Complaint ¶ 20 ("Comp."). This statement clearly puts defendants on notice of the nature and basis of plaintiff's claim. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d at 1115. Plaintiff identifies herself as a member of a minority class, effectively asserts that she requested and was denied a transfer, and cites three separate statements that implicate race as a deciding factor in deny-

ing the transfer. *See* Compl. ¶¶ 3, 10, 12, 13, 15–16. Taking these allegations as true, it is apparent that plaintiff's complaint properly puts defendants on notice as to the nature and basis of plaintiff's claims and thus adequately states a claim. *See Glymph v. District of Columbia*, 180 F.Supp.2d at 114. Accordingly, it is hereby

ORDERED that defendants' motions to dismiss for lack of personal jurisdiction, improper venue and failure to state a claim are DENIED; and it is

FURTHER ORDERED that counsel for all parties shall appear for a status conference on January 29, 2003 at 9:30 a.m.

SO ORDERED.