**ATLANTIGAS CORP., Plaintiff,**

v.

**NISOURCE, INC., et al., Defendants.**

**No. CIV.A. 02–1078(PLF).**

United States District Court,
District of Columbia.

Oct. 10, 2003.

Robert C. Sanders, Upper Marlboro, MD, for Plaintiff.

Mark H. Lynch, Covington & Burling, Washington, DC, for Defendants.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court for consideration of the defendants' motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff Atlantigas Corp. originally filed this suit against three groups of related corporate entities and one partnership, charging violations of the Sherman and Clayton Antitrust Acts and the Racketeer Influenced and Corrupt Organizations Act ("RICO"); it also made various state tort claims. Plaintiff earlier dismissed with prejudice two of the corporate group defendants (the "PEPCO" and "Shell" defendants). As a result, four corporate defendants remain (collectively, the "Columbia Defendants"), as does Cove Point LNG LLP ("Cove Point").

The Columbia Defendants filed motions to dismiss under Rule 12(b)(2), asserting that the amended complaint fails to allege facts sufficient to support personal jurisdiction over any of the Columbia Defendants and that no personal jurisdiction in fact exists, and under Rule 12(b)(6) for failure to state a claim. Cove Point filed its own Rule 12(b)(2) motion, joined the Columbia Defendants' Rule 12(b)(6) motion, and made the additional claim that because the amended complaint does not seek relief or a determination of liability with respect to Cove Point, the partner-

ship should be dismissed from the suit under Rule 12(b)(6). After briefing on these motions was complete, the Court denied plaintiff's motion for leave to file a second amended complaint based on the prejudice to the defendants that would result. *See* Order of March 5, 2003.

The Court heard oral argument on defendants' Rule 12(b)(2) motions on April 8, 2003. Because plaintiff raised several new arguments at oral argument, the Court directed the parties to file supplemental briefs on the newly-raised issues. After carefully considering the briefs and supplemental briefs and the oral arguments presented by counsel, the Court granted the Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction in an Order dated September 29, 2003.[1] This Opinion explains the reasons for that decision.

## I. BACKGROUND

This case concerns the highly regulated natural gas storage and transportation industry, which is distinct from the industry involved in the sale of natural gas to the consumer. Among other things, plaintiff is a purchaser, marketer and shipper of natural gas on interstate pipelines. *See* Amended Complaint ("Amm. Cplt.") ¶ 1. Plaintiff alleges that the defendants (two interstate pipelines and their subsidiaries and a partnership of those subsidiaries) provided illegally discounted gas supply, storage and transportation services on interstate natural gas pipelines for approximately nine interstate shippers ("Select Shippers") in exchange for percentages of the illegal profits obtained by those Select Shippers from the eventual sale of the gas to end-users, to the detriment of plaintiff and other similarly situated competitors of the Select Shippers (the "Gas Scheme"). *See id.* ¶¶ 2–3.

### A. *Industry Background*

According to the amended complaint, the storage and transportation of natural gas in the United States functions in the following way: Most of the natural gas in the United States originates in the southern Gulf states (Louisiana, Oklahoma and Texas) and is delivered from its source to local distribution companies ("LDCs") that then transport the gas to consumers. *See* Amm. Cplt. ¶ 41. The capacity of the pipelines used to transport natural gas is limited and, during the peak use season, winter and its surrounding months, demand outweighs the supply available from the pipelines. To respond to this problem, the pipeline owners have built storage facilities at specific points along the pipelines in which gas is stored in the off-peak months for use during the winter. *See id.* ¶¶ 42–44. Pipeline companies do not ship natural gas directly to LDCs, but instead only provide storage and transportation services to other shippers that in turn market the gas to their LDC customers. *See id.* ¶ 47.

The Federal Energy Regulatory Commission ("FERC") regulates the natural gas transportation and storage industry, including regulation of the process by which the agreements between pipeline owners and natural gas shippers and wholesalers ("transportation capacity agreements") are made. *See* Amm. Cplt. ¶ 48. There are two types of transportation capacity agreements: "firm" agreements, under which pipeline capacity is always available to the contracting shipper at a fixed rate, and "interruptible" agreements, under which supply may be preempted by firm agreement require-

---

1. The Court issued an amended order on October 3, 2003 to make clear that the dismissal was without prejudice.

ments. *See id.* Certain LDCs own most of the firm pipeline capacity available, and competing shippers must negotiate with those LDCs for the release and assignment of any surplus firm capacity rights. *See id.* ¶ 49. Plaintiff alleges that this system provides those LDCs that have firm agreements a quasi-monopoly during the peak season that allows those LDCs (1) to demand low purchase prices from natural gas suppliers, because only the LDCs with firm capacity can deliver natural gas to end-users, (2) to take accounts away from suppliers with no firm capacity rights, and (3) to render interruptible agreements useless. *See id.* ¶ 53.[2]

FERC regulates through a tariff system most other aspects of the storage and transportation of natural gas, a system developed in response to early regulatory failures to adapt to the ever-changing non-regulated aspects of the markets. *See* Amm. Cplt. ¶¶ 65–80. In the 1990's, FERC reduced its own responsibilities so it no longer micro-managed each storage and transportation agreement. It promulgated new regulations intended to "level the playing field" by requiring interstate pipeline companies to allow firm transportation customers to release or assign their excess firm capacity to other market participants only by auction to the highest bidder on an equal access basis. It further required the pipelines to execute the release and award of their own capacity on public, regulated electronic bulletin boards. *See id.* ¶¶ 73–80.

### B. *Defendants' Allegedly Illegal Activities*

#### 1. The Defendants

In the amended complaint, the Columbia Defendants are described as follows: Ni-

source Inc. is the parent corporation that owns the rest of the Columbia Defendants. Columbia Gas Transmission Co. ("Columbia Gas") and Columbia Gulf Transmission Co. ("Columbia Gulf") are regulated interstate pipeline owners, and Columbia LNG Corp. and CLNG Corp. are a general and limited partner, respectively, in Cove Point. *See* Amm. Cplt. ¶¶ 25–29. Plaintiff alleges that Cove Point is a partnership comprised of several defendant entities that manages and operates shipping and storage facilities in Maryland ("Cove Point Facilities") and an 87–mile pipeline running between Maryland and Virginia. Plaintiff claims that the Columbia Defendants, through Columbia LNG Corp. and CLNG Corp. (along with the two additional groups no longer part of this action), function as the general partners of Cove Point. *See id.* ¶¶ 34–37; *see also* Cove Point LNG Limited Partnership Chart, Amm Cplt. at 10.

#### 2. The Alleged Gas Scheme

Plaintiff alleges that the Columbia Defendants own and control vast natural gas storage facilities and pipelines, and that Columbia Gas is authorized to offer interruptible storage services when it can deliver storage capacity in excess of its own commitments, so long as the storage capacity is offered on an electronic bulletin board accessible to the public under FERC regulations. *See* Amm. Cplt. ¶¶ 83, 85–86. Plaintiff alleges that the Gas Scheme began in 1995 when several officers of Columbia Gas agreed to, and Columbia Gas subsequently began to, provide greater capacity and transportation flexibility to its own unregulated marketing affiliate, Columbia Energy Services, Inc. ("CES"), despite FERC requirements that providers treat their affiliates on an equal

---

**2.** The amended complaint also details how the actual shipment and delivery of gas oper-

ates. *See id.* ¶¶ 54–64.

level with other shippers. *See id.* ¶¶ 92–93.

From that point, the scheme allegedly grew. First, plaintiff alleges that certain Columbia Gas employees relocated to other gas marketing and shipping companies and that these shipping companies then joined the Gas Scheme as Select Shippers. *See* Amm. Cplt. ¶¶ 95–102. Then two additional shippers joined the group of Select Shippers as a result of personal relationships between various officers of the companies involved. *See id.* ¶¶ 103–104. Finally, Washington Gas Light Co. ("WGL"), a Washington, D.C. public utility, entered into the scheme and became a crucial actor in the alleged conspiracy. *See id.* ¶¶ 105–110. Specifically, plaintiff charges that WGL hired a Select Shipper, Dynegy, Inc. ("Dynegy"), to manage its gas distribution assets, including WGL's existing Columbia Gas and Cove Point storage and transportation contracts. At the same time, Washington Gas Energy Services, Inc. ("WGES"), WGL's own unregulated affiliate, entered into a joint marketing arrangement with CES, Columbia Gas's own unregulated marketing affiliate. Dynegy, as manager of WGL's assets, then relinquished WGL's firm storage rights in Columbia Gas, thereby freeing up Columbia Gas firm capacity. WGL in turn obtained replacement storage capacity from Cove Point. *See id.* ¶¶ 107–110.

Plaintiff asserts that the significance of these transactions is revealed when placed in the context of the history of the industry. Plaintiff explains that since deregulation, shippers often have requested additional firm transportation and storage services from Columbia Gas in order to deliver gas to the East Coast market, and into "Operating Area 10" in particular (an area undefined in the complaint), but that Columbia Gas always denied having any additional capacity to fill those requests. *See* Amm. Cplt. ¶¶ 112–113. Through the Gas Scheme, plaintiff alleges, Columbia Gas "gained" additional firm storage and transportation services when WGL exchanged its firm services with Columbia Gas for services provided by the Cove Point Facility.[3] This allegedly allowed Columbia Gas then to divert the firm services relinquished by WGL to the Select Shippers. *See id.* ¶¶ 112–116. Plaintiff charges that Columbia Gas provided these firm services to the Select Shippers without following the FERC public notice requirements for firm service releases. *See id.* ¶¶ 132–135.

Plaintiff also asserts that Cove Point falsely categorized a portion of the replacement firm storage service it provided to WGL as interruptible transportation service, which allowed the partnership to provide WGL with firm services without complying with FERC regulations that required public offering and revenue reporting of all such services. *See* Amm. Cplt. ¶¶ 139–142. In reality, plaintiff claims, the services provided to WGL by Cove Point must have been firm services or, in other words, first priority guaranteed services; otherwise those services would not have been adequate replacements for the initial firm services released by WGL to Columbia Gas. *See id.* ¶¶ 140–144.

---

**3.** Plaintiff argues that the Cove Point pipeline was capable of providing WGL with the necessary new firm services because while FERC placed a tariff on the Cove Point pipeline's storage facilities, it did not place a tariff on the pipeline itself, which in addition to being a delivery mechanism provided additional storage. Through line packing, or increasing the pipeline's storage capacity by increasing pressure within the pipeline itself, the Cove Point pipeline could be used to provide WGL with the firm storage service it had released back to Columbia Gas. *See* Amm. Cplt. ¶¶ 117–128.

Plaintiff alleges that the participants in the Gas Scheme gained from the scheme in different ways, depending on their roles. The Select Shippers received from Columbia Gas the firm services relinquished by WGL, which allowed them to deliver gas and generate windfall profits, to use their preemptive firm capacity rights to prevent plaintiff and other competitors in Operating Area 10 from delivering gas to their own customers, to hoard scarce firm storage and transportation services, and to lure customers away from plaintiff and other non-Select Shippers. The Columbia Defendants gained from the scheme because the Select Shippers paid a large portion of their windfall profits to Cove Point, and thereby to the Columbia Defendants through their ownership interests in the partnership. *See* Amm. Cplt. ¶¶ 153–154.

### 3. FERC Knowledge of the Gas Scheme

Plaintiff alleges that in February 1999 the Columbia Defendants brought the Gas Scheme to the attention of FERC and that on October 25, 2000, FERC issued an order approving a stipulation and consent agreement between Columbia Gas, Columbia Gulf and CES ("2000 FERC Order"). According to plaintiff, the 2000 FERC Order stated that Columbia Gas and Columbia Gulf had provided illegally discounted firm and other transportation services to select customers, including CES. As a remedy, FERC ordered Columbia Gas and Columbia Gulf to disgorge $27.5 million in service charges to non-Select Shippers, including plaintiff. *See* Amm. Cplt. ¶¶ 158–164. Plaintiff asserts that the 2000 FERC Order was too limited, however, for several reasons: It did not provide a remedy for antitrust damages incurred by plaintiff and other non-Select Shippers; it did not identify all the Select Shippers involved; it misstated the mechanics of the Gas Scheme, the profits, and the manner in which the profits were distributed because of misrepresentations made by the Columbia Defendants; and it failed to recognize that the scheme continued past the issuance of the 2000 FERC Order through the use of a Parking and Lending license issued by FERC. *See id.* ¶¶ 168–172.

### 4. Alleged Continuation of the Gas Scheme through PAL Services

Plaintiff alleges that prior to Columbia Gas's disclosure to FERC of some aspects of the Gas Scheme, the Columbia defendants ensured that the benefits of the scheme nonetheless would continue when Columbia Gas applied for and received from FERC the approval to offer a Parking and Lending ("PAL") service. This service allegedly provided all Columbia Gas customers with the ability to hold or receive natural gas at any point listed on Columbia's list of interconnects (points where gas enters and exits the system) on an interruptible basis under a negotiable rate, allowing the shipper to store excess gas and borrow gas from storage. *See* Amm. Cplt. ¶¶ 193–194. Plaintiff asserts that this service effectively legalized the Gas Scheme. The rates charged under the PAL service were the same rates, or, as plaintiff characterizes them, the same share of the profits from the illegal conspiracy, charged to Select Shippers under the Gas Scheme. Furthermore, because PAL was offered on a first-come first-served basis and was awarded to the shipper that could negotiate the proper scenario to fit the Columbia Defendants' tariff criteria, the Select Shippers, which knew services would open up after the Columbia defendants made their disclosure to FERC, placed themselves first in line in order to receive PAL services, and in fact did receive them. *See id.* ¶¶ 193–202.

### C. Plaintiff's Claims and Alleged Damages

Plaintiff brings the following nine claims against the Columbia defendants:

- *Count I:* violation of Sections 1 and 2 of the Sherman Act, prohibiting restraint of trade and monopolistic conduct, and Section 2 of the Clayton Act, as amended by the Robinson–Patman Act, prohibiting price discrimination by the Columbia Defendants (*see* Amm. Cplt. ¶¶ 225–241); [4]

- *Count II:* RICO Section 1962(a), with mail and wire fraud as predicate acts (receipt of income derived from a pattern of racketeering activity to use or invest any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce) by the Columbia Defendants (*see id.* ¶¶ 242–259);

- *Count III:* RICO Section 1962(b), with mail and wire fraud as predicate acts (acquisition or maintenance of any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce) by the Columbia Defendants (*see id.* ¶¶ 260–275);

- *Count IV:* RICO Section 1962(c), with mail and wire fraud as predicate acts (employment by or association with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity) by the Columbia Defendants (*see id.* ¶¶ 276–291);

- *Count V:* RICO Section 1962(d), with mail and wire fraud as predicate acts (conspiracy to violate any of the provisions of subsection (a), (b), or (c) of this section) by the Columbia Defendants (*see id.* ¶¶ 292–307);

- *Count VI:* tortious interference with contractual relations by the Columbia Defendants (*see id.* ¶¶ 308–317);

- *Count VII:* tortious interference with contractual relations by the Columbia Defendants (separate claim) (*see id.* ¶¶ 318–336);

- *Count VIII:* common law fraud by the Columbia Defendants (*see id.* ¶¶ 327–331); and

- *Count IX:* common law fraud by the Columbia Defendants (separate claim) (*see id.* ¶¶ 332–336).

Plaintiff alleges damages in the form of (1) an inability to secure gas orders from new end-user and wholesale customers due to several Select Shippers' heavy price discounting of delivered gas (*see* Amm. Cplt. ¶¶ 214–215); (2) loss through payment of salaries of expanded sales force that was unable to attain additional business from new end-user and wholesale customers (*see id.* ¶¶ 216–217); and (3) loss of income due to forced sale of diminished assets (*see id.* ¶¶ 219–224).

## II. DISCUSSION

The Columbia Defendants move to dismiss the amended complaint for failure to state facts that would give rise to personal jurisdiction in this Court over the four Columbia Defendants and on the further ground that the Columbia Defendants are not subject to personal jurisdiction in this Court. *See* Columbia Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Related Grounds ("Colum. Defs.' Mot.") at 1–2.[5] Cove Point separately

---

4. In its opposition to defendants' motions to dismiss, plaintiff concedes that it failed adequately to allege price discrimination and thus waives all such claims. *See* Plaintiff's Memorandum in Opposition to Defendants'

Joint Motion to Dismiss the Amended Complaint ("Pls.' 12(b)(6) Opp.") at 3.

5. Defendant Nisource, Inc. also asserts that the amended complaint alleges no conduct by

makes the same arguments with respect to the allegations relating to it in the amended complaint and its lack of presence in the District of Columbia. *See* Motion to Dismiss of Defendant Cove Point LNG Limited Partnership at 1. Upon careful consideration of the parties' briefs and arguments, the Court concludes that it lacks personal jurisdiction over all remaining defendants.

### A. *Rule 12(b)(2) Standard of Review*

Plaintiff bears the burden of establishing personal jurisdiction over each individual defendant. In order to meet its burden, plaintiff must allege specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations. *See GTE New Media Services, Inc. v. Ameritech Corp.*, 21 F.Supp.2d 27, 36 (D.D.C. 1998), *remanded on other grounds sub nom, GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C.Cir. 2000); *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F.Supp. 515, 520 (D.D.C.1995). Moreover, plaintiff cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant. *See Rush v. Savchuk*, 444 U.S. 320, 331–32, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) (rejecting aggregation of co-defendants' forum contacts in determining personal jurisdiction because "the requirements of *International Shoe* must be met as to each defendant over whom a state court exercises jurisdiction"). When considering personal jurisdiction, the Court need not treat all of the plaintiff's allegations as true. Instead, the court "may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." *United States v. Philip Morris*

*Inc.*, 116 F.Supp.2d 116, 120 n. 4 (D.D.C. 2000). *See also Capital Bank International, Ltd. v. Citigroup, Inc.*, 276 F.Supp.2d 72, 74 (D.D.C.2003); *Novak–Canzeri v. Al Saud*, 864 F.Supp. 203, 206 (D.D.C.1994) ("the Court must accept Plaintiff's claims as true in ruling on a 12(b)(2) motion, unless they are directly contradicted by an affidavit").

### B. *Plaintiff's Alleged Bases for Personal Jurisdiction*

Plaintiff concedes that all of the Columbia Defendants are incorporated and maintain their principal offices outside of the District of Columbia. *See* Amm. Cplt. ¶¶ 25–29. Plaintiff also concedes that Cove Point is organized under Delaware law with its principal place of business in Virginia. *See id.* ¶ 34. Plaintiff nevertheless asserts five bases for personal jurisdiction over the defendants. In the amended complaint, plaintiff asserts that jurisdiction exists (1) under Section 13–423(a)(1) of the District of Columbia long-arm statute, because all the defendants have lobbied federal agencies and the United States Congress in this forum, thereby subjecting themselves to the jurisdiction of the Court; (2) under Section 13–423(a)(1), under a separate "transacting business" claim that "the Illegal Gas Scheme was perpetrated by interstate mail and interstate wire fraud from locations outside of the District of Columbia to locations within the District of Columbia, including the offices of the FERC"; and (3) under Section 12 of the Clayton Act, which, plaintiff asserts, provides for nationwide service of process and, by extension, jurisdiction "because all defendants

Nisource relevant to plaintiff's claims other than that Nisource is now the parent company of the Columbia Defendants and is sued by virtue of its November 2000 acquisitions. Nisource argues that the amended complaint therefore fails to state a claim for which relief can be granted against it. *See* Colum. Defs.' Mot. at 2.

have contacts with the forum of the United States." Amm. Cplt. ¶ 19.[6]

In its pre-argument supplemental memorandum, plaintiff asserts that its amended complaint included a fourth basis for personal jurisdiction, again under Section 13–423(a)(1), on the ground that CES, Columbia Gas's unregulated marketing affiliate, entered into the joint marketing agreement with WGES to market natural gas in a region that includes Washington, D.C. and that such contacts should be extended to defendants. *See* Plaintiff's Supplemental Memorandum in Opposition to the Columbia Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Related Grounds ("Pl.'s 1st Supp. Mem.") at 2. Finally, plaintiff asserts that the Court has personal jurisdiction over defendant Columbia Gas under the general jurisdictional grant of Section 13–334(a) of the District of Columbia Code. *See* Plaintiff's Supplemental Memorandum in Opposition to the 12(b)(2) Motions to Dismiss the Amended Complaint of the "Columbia Group" and the Cove Point LNG Limited Partnership ("Pl.'s 2d Supp. Mem.") at 10–15. The Court will discuss plaintiff's various jurisdictional arguments in turn.

C. *Section 13–423(a)(1): Transacting Business Under the District of Columbia Long Arm Statute*

Section 13–423(a)(1) of the District of Columbia long-arm statute provides that "a District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Co-

lumbia." D.C. CODE § 13–423(a)(1). To establish personal jurisdiction under this subsection, a plaintiff must demonstrate that (1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Dooley v. United Technologies*, 786 F.Supp. 65, 71 (D.D.C.1992). This subsection of the long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause of the Constitution. *First Chicago Int'l v. United Exchange Co. Ltd.*, 836 F.2d 1375, 1377 (D.C.Cir.1988); *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 810–811 (D.C.1976) (en banc). The constitutional touchstone of the due process determination is "whether the defendant purposefully established minimum contacts in the forum state," *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal citations and emphasis omitted), or "purposefully availed itself of the privilege of conducting business in the forum state," and whether the defendant's conduct in connection with that state is such that it "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal citation and quotation omitted).

---

6. In the amended complaint and in its briefs, plaintiff does not distinguish as to which defendant each argument pertains. For the purpose of the Rule 12(b)(2) analysis, the Court has attempted to determine the specific defendant plaintiff is addressing in its various arguments and to discuss the validity of the jurisdictional arguments with respect to those defendant(s). To the extent that plaintiff is assuming that the Court will extend jurisdiction over one named defendant to the other named defendants under a theory of parent or affiliate liability, such a claim is not developed in either the amended complaint or the plaintiff's papers.

While the long-arm statute is interpreted broadly and factual disputes are to be resolved in favor of the plaintiff, plaintiff must allege some specific facts evidencing purposeful activity by the defendant in the District of Columbia by which it invoked the benefits and protections of the District's laws. *First Chicago International v. United Exchange Co., Ltd.,* 836 F.2d at 1378 ("[i]t is settled that a plaintiff must allege specific acts connecting [the] defendant with the forum") (internal quotation and citation omitted). *See also Edmond v. United States Postal Service General Counsel,* 949 F.2d 415, 428 (D.C.Cir. 1991); *United States v. Philip Morris, Inc.,* 116 F.Supp.2d at 121. In addition, because a court in the District of Columbia may exercise jurisdiction over a non-resident defendant "only [for] a claim for relief arising from the specific acts enumerated in [the statute] ...," D.C. CODE § 13–423(b), plaintiff's jurisdictional allegations must arise from the same conduct of which it complains. *Willis v. Willis,* 655 F.2d 1333, 1336 (D.C.Cir.1981); *Dooley v. United Technologies Corp.,* 786 F.Supp. at 71; *LaBrier v. A.H. Robins Co., Inc.,* 551 F.Supp. 53 (D.D.C.1982). "The claim itself must have arisen from the business transacted in the District of Columbia or there is no jurisdiction." *Novak–Canzeri v. Al Saud,* 864 F.Supp. at 206.

### 1. Long–Arm Jurisdiction Based on Contacts with the Federal Government

Plaintiff first asserts that the defendants can be found to have "transacted business" in this jurisdiction under Section 13–423(a)(1) as a result of their contacts with the federal government both through their general lobbying activities and by willfully submitting false reports to FERC. *See* Plaintiff's Memorandum in Opposition to the Columbia Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Related Grounds ("Pl.'s Colum. Opp.") at 6.

First, the Court rejects plaintiff's claim that any of the defendants availed themselves of the Court's jurisdiction as a result of lobbying activities in which they may have engaged. The District of Columbia is the Nation's capital. Because it is vital that all citizens from all parts of the country have unfettered access to petition their government, the courts of this jurisdiction have long recognized "a government contacts" exception to the "transacting business" provision of the long-arm statute. Under that exception, a person or company does not subject itself to the jurisdiction of the courts of the District of Columbia merely by filing an application with a government agency, or by seeking redress of grievances from the Executive Branch or the Congress. *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984); *Freiman v. Lazur,* 925 F.Supp. 14, 24 (D.D.C.1996); *Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d at 813. "The District of Columbia's unique character as the home of the federal government requires this exception in order to maintain unobstructed access to the instrumentalities of the federal government." *Cellutech, Inc. v. Centennial Cellular Corp.,* 871 F.Supp. 46, 50 (D.D.C.1994). *See also Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.* 989 F.Supp. 265, 271 (D.D.C.1998).

The Columbia Defendants acknowledge that Nisource, Columbia Gas and Columbia Gulf share a federal government relations office in the District of Columbia, but aver that the office's "sole function is to work with the FERC and other regulatory agencies, and with members of Congress and congressional committees, in connection with federal regulatory and legislative

matters," an assertion plaintiff does not refute in its opposition. *See* Memorandum of Points and Authorities in Support of Columbia Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Related Grounds ("Colum. Defs.' Mem.") at 4–5, citing Colum. Defs.' Mem., Ex. 1, Declaration of Carl Levander ¶¶ 6, 9, 16.[7] The Court easily concludes that such activities are precisely the type of activities protected by the "government contacts" exception and cannot serve as the basis for personal jurisdiction under Section 13–423(a)(1). *See Naartex Consulting Corp. v. Watt,* 722 F.2d at 787.

Second, the Court rejects plaintiff's more particularized assertion that the amended complaint supports jurisdiction because it alleges that Columbia Gas filed false documents with FERC in the District of Columbia, and that such actions do not fall under the protection of the "government contacts" exception because the filings were not "petitioning activity [or] recourse to the courts." Pl.'s Colum. Opp. at 6. In making this claim, plaintiff cites to one paragraph in the amended complaint that quotes a section of the 2000 FERC Order that states that it was FERC's position that Columbia Gas "willfully filed false gas storage reports with the Commission in violation of Section 10(b) of the NGA." Amm. Cplt. ¶ 163.

It is established law that a defendant's filings with a federal agency generally do not subject that defendant to the jurisdiction of the Court. *See Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.,* 989 F.Supp. at 270 ("a person or company

does not subject itself to the jurisdiction of the courts of the District of Columbia merely by filing an application with a government agency"); *Cellutech, Inc. v. Centennial Cellular Corp.,* 871 F.Supp. at 50 ("The fact that after the parties concluded the contract negotiations the defendants made filings with the FCC and the SEC in the District of Columbia does not, standing alone, provide jurisdiction here."). The court of appeals in *Naartex* cautioned, however, that "a different case might be presented" if a plaintiff makes "credible and specific allegations [. . .] that the [defendants] had used the proceedings as an instrumentality of the alleged fraud." *Naartex Consulting Corp. v. Watt,* 722 F.2d at 787. Under *Naartex,* the question for the Court is whether plaintiff has adequately and specifically alleged that Columbia Gas, by submitting false reports to FERC, used the Commission as an instrumentality of the Gas Scheme.[8]

The allegations in the amended complaint concerning the structure and function of the Gas Scheme charge that the alleged unlawful agreements and transfers of interests in firm services between the Columbia Defendants and various Select Shippers took place outside the purview of FERC. *See* Amm. Cplt. ¶ 82. Although these agreements and transactions may have violated FERC tariff regulations, the Court concludes that the generalized and conclusory allegations that false gas storage and transportation data were filed by Columbia Gas with the Commission (*see id.* ¶¶ 82, 163) are insufficiently specific to justify application of the *Naartex* caveat. At most these filings were more a by-product

---

7. Cove Point neither maintains its own nor shares with others a government relations office. *See* Memorandum of Points and Authorities in Support of Motion to Dismiss of Defendant Cove Point LNG Limited Partnership ("Cove. Pnt. Mem."), Ex. 1, Declaration of Gary L. Sypoit ("Sypoit Decl.") ¶ 7.

8. Even if it did, of course, this would only give the Court jurisdiction over Columbia Gas, not all the defendants remaining in the case. *See supra,* at 42.

of the Gas Scheme than instruments through which the Gas Scheme was effectuated. The contacts with FERC therefore fall squarely within the government contacts exception. *See Lamb v. Turbine Designs, Inc.*, 41 F.Supp.2d 1362, 1365 (N.D.Ga.1999) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d at 787) (defendants' submission to FAA of allegedly misappropriated design did not constitute use of that agency as instrumentality of alleged fraud); *Freiman v. Lazur*, 925 F.Supp. at 24 (defendant's application to U.S. Copyright Office of allegedly fraudulent copyright protected by government contacts exception and "cannot serve a as a basis for asserting personal jurisdiction over him"). *Compare BCCI Holdings (Luxembourg) v. Khalil*, 20 F.Supp.2d 1, 6, 7 n. 5 (D.D.C.1997) (under *Naartex*, government contacts exception does not exempt defendant who traveled to Washington, D.C. in order to appear before the Federal Reserve for express purpose of making false representations in direct perpetration of a fraud); *Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 243 (D.Md. 1992) (where fraud on FDA in providing false and misleading information to agency was element of claim asserted against defendants, government contacts bar not triggered).[9]

## 2. Long–Arm Jurisdiction Based on Gas Scheme Agreements

▆ Plaintiff next alleges that "the Illegal Gas Scheme was perpetrated by interstate mail and interstate wire fraud from locations outside of the District of Columbia to locations within the District of Columbia, including the offices of the FERC," thereby meeting the requirements of Section 13–423(a)(1). Amm. Cplt. ¶ 19. Plaintiff elaborates in its opposition to defendants' motions, asserting that the Court has jurisdiction over all the defendants because the amended complaint alleges: (1) that Columbia Gas transacted business in the District of Columbia by providing WLG, a public utility in the District of Columbia, with natural gas storage and transportation commodities (*see* Pl.'s Colum. Opp. at 5); and (2) that Columbia Gas in fact perpetrated the Gas Scheme by transacting business with WGL by transferring WGL's contractual rights on Columbia Gas's pipeline system to the Cove Point Facilities (*see id.* at 5–6). Although seemingly addressed towards all the defendants, the allegations only pertain to Columbia Gas.

The first question is whether Columbia Gas transacted business in the District of Columbia by providing WLG, a public utility in the District of Columbia, with natural gas storage and transportation commodities. In their reply brief, the Columbia Defendants submitted the second declaration of Carl Levander, Vice President, Regulatory & Strategic Initiatives for Columbia Gas & Columbia Gulf. Mr. Levander detailed the transactions that pipeline companies such as Columbia Gas and Gulf have with shippers. According to Mr. Le-

---

**9.** The remaining "government contact" cases relied on by plaintiff are distinguishable or irrelevant. Plaintiff does not allege that defendants' contacts with the government are more akin to business transactions or to other non-traditional governmental contacts than to contacts with a federal agency for a conventional governmental purpose. *Compare Johns v. Rozet*, 770 F.Supp. 11, 19 (D.D.C.1991) (negotiations and transactions with department regarding private rehabilitation of public housing property "not a uniquely governmental function" and did not fall under the exception); *United States v. Wilfred American Education Corp.*, Civil Action No. 86–0333, 1987 WL 10501, at *5 (D.D.C. April 23, 1987) (no exception where private entity entered into participation agreements with department and complied with various reporting requirements in order to remain prioritized institutional participant of government student aid program).

vander, Columbia Gas does not have any direct purchase or supply contracts to the District of Columbia, has no pipelines or facilities in the District, and does not provide gas service or delivery in the District. *See* Defendants' Joint Reply in Support of Motions to Dismiss ("Defs.' Rep.") at 22–23 and Ex. A, Second Declaration of Carl Levander ("Sec. Levander Decl.") ¶ 4. Instead, Mr. Lavender explains, a utility normally buys the gas from a marketing or gas production company, and arranges with a pipeline company to transport, store and redeliver the gas. *See* Sec. Levander Decl. ¶ 5.

Also according to Mr. Levander, all the events that make up the alleged Gas Scheme, from the submission of transportation and service requests to Columbia Gas by WGL employees, to the transfer of ownership of the gas from the Select Shippers to WGL at pipeline intersect points, took place outside of the District of Columbia from WGL out-of-state offices in West Virginia. *See* Sec. Levander Decl. ¶ 5. Plaintiff's allegations in the amended complaint and the arguments in its opposition and supplemental opposition to defendants' motions offer nothing to counter Mr. Levander's statements or otherwise convince the Court that any related activity took place in the District of Columbia. "When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case." *Stephenson v. Cox*, 223 F.Supp.2d 119, 121 (D.D.C.2002). *See also*

*Federal Deposit Insurance Corp. v. Bender*, 127 F.3d 58, 67 (D.C.Cir.1997).

The Court concludes that it does not have personal jurisdiction over Columbia Gas merely because the alleged service storage and transportation agreements or contracts were with a District of Columbia public utility when the agreements were negotiated and executed wholly outside of the District. *See Freiman v. Lazur*, 925 F.Supp. at 25–26 (finding no personal jurisdiction under Section 13–423(a)(1) where contracts were executed and performed outside of the District of Columbia, defendants had no offices in the jurisdiction, and all parties worked and resided outside of the District). The fact that the commodity transported eventually will be used in the District of Columbia does not convince the Court otherwise. Nor does the fact Columbia Gas may have mailed invoices to WGL to the District or received payment from within the District. *See COMSAT Corp. v. Finshipyards S.A.M.*, 900 F.Supp. at 522–23 (invoices sent from within District to non-resident defendant for services performed out of forum are "administrative services" not integral to defendants' operations "in a way that would be necessary to show that [defendant] purposefully availed itself of the privilege of doing business in the District of Columbia").[10]

Plaintiff's second argument—that Columbia Gas perpetrated the Gas Scheme directly by transacting business with WGL in transferring WGL's contractual rights on Columbia Gas's pipeline system to the Cove Point Facilities—fails for the same reasons. The alleged activities surround-

---

**10.** Any allegations directed specifically toward Cove Point in this regard also fail to demonstrate personal jurisdiction. The unrefuted declaration of Mr. Sypoit is that the partnership, its offices and facilities and its pipelines exist wholly outside the boundaries of the District of Columbia. *See* Sypoit Decl. ¶¶ 4–5. While Cove Point is jointly owned by

Columbia Gas and PEPCO, it had no office or facility in the District of Columbia. According to Mr. Sypoit, Cove Point's business "is to receive, store and deliver natural gas to energy distribution companies, who then determine where the gas will be sold and delivered," and "none of that activity is conducted in the District." *Id.* ¶ 6.

ing the transfer of WGL's rights in the Columbia Gas pipeline to the Cove Point facilities did not occur, even in part, in the District of Columbia, and none of the concerned pipelines traverse the District.

### 3. Long–Arm Jurisdiction Based on Activities of an Affiliate

Plaintiff's final long-arm statute argument is that because the amended complaint alleges that CES, Columbia Gas's unregulated marketing affiliate, entered into an agreement with WGES, WGL's unregulated marketing affiliate, to market natural gas in the District of Columbia, the Columbia Defendants are subject to the jurisdiction of the Court under the "transacting business" prong of the long arm statute. *See* Pl.'s Supp. Mem. at 2. Ordinarily, a defendant corporation's contacts with a forum may not be attributed to affiliated corporations. *See El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 675–76 (D.C.Cir.1996); *Johnson–Tanner v. First Cash Financial Services, Inc.,* 239 F.Supp.2d 34, 38 (D.D.C.2003); *Shapiro, Lifschitz & Schram, P.C. v. Hazard,* 90 F.Supp.2d 15, 22 (D.D.C.2000); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 62 F.Supp.2d 13, 19 (D.D.C.1999). An exception exists, however, when the party contesting jurisdiction is found to be nothing more than the alter ego of an affiliated corporation over which the court does have jurisdiction; in that case the affiliated corporation's jurisdictional contacts may be extended to reach the other corporate entity. *See El–Fadl v. Central Bank of Jordan,* 75 F.3d at 676 ("if parent and subsidiary 'are not really separate entities,' . . . or one acts as an agent of the other, . . . the local subsidiary's contacts can be imputed to the foreign parent"); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 62 F.Supp.2d at 20 (same, where parent corporation so dominates subsidiary as "to negate its separate personality"). "In

such cases, the foreign parent will be found to be transacting business in the forum state through the activities of its subsidiary." *Color Sys., Inc. v. Meteor Photo Reprographic Sys., Inc.,* 1987 WL 11085, *4 (D.D.C.1987).

Whether one corporation is the alter ego of another is a question of law to be decided by the court. *See Shapiro, Lifschitz & Schram, P.C. v. Hazard,* 90 F.Supp.2d at 22; *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 62 F.Supp.2d at 19–20. Ultimately, the question is whether the parent corporation "so dominated the [subsidiary] corporation as to negate its separate personality," making the exercise of jurisdiction over the absent parent fair and equitable. *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 62 F.Supp.2d at 20 (quoting *Hart v. Department of Agriculture,* 112 F.3d 1228, 1231 (D.C.Cir.1997)); *see also Johnson–Tanner v. First Cash Financial Services, Inc.,* 239 F.Supp.2d at 38.

The allegations in the amended complaint involving CES as a corporate entity are limited to descriptions of its status as a non-regulated marketing affiliate and Select Shipper in the Gas Scheme and to a list of the names of CES's officers at the time of the scheme, none of whom are listed as officers of the other Columbia Defendants. *See* Amm. Cplt. ¶¶ 89–91. The pleading is devoid, however, of any allegations tending to demonstrate that any of the Columbia Defendants dominated CES to the extent required by law in order to extend CES's contacts to any other defendant. In fact, the allegations concerning CES's involvement with Columbia Gas tend to reinforce their status as separate identities. For example, plaintiff alleges that the officers of both corporations met and bilaterally agreed to enter into the Gas Scheme (*see id.* ¶ 92), that CES independently entered into an agree-

ment with WGES to deliver a discounted gas supply to the District of Columbia (*see id.* ¶¶ 107–108), and that the 2000 FERC Order addressed the activities of CES independent of its discussion of the other Columbia Defendants (*see id.*). In other words, plaintiff has failed to meet its burden of demonstrating that CES is an alter ego for any of the Columbia Defendants. *See El–Fadl v. Central Bank of Jordan,* 75 F.3d at 676.[11]

### D. Personal Jurisdiction Under Section 12 of the Clayton Act

Plaintiff next asserts that the Court has jurisdiction over the all defendants under a jurisdictional grant in Section 12 of the Clayton Act. *See* Amm. Cplt. ¶ 19 ("the Clayton Act provides for nationwide service of process because all defendants have contacts with the forum of the United States, rather than the forum in which this court sits"). Section 12 states that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. Plaintiff's allegation is ambiguous, and can be read in one of two ways.

■ To the extent that plaintiff argues that Section 12 extends the Court's jurisdictional reach to the entire nation because it provides for national service of process, the court of appeals soundly rejected this interpretation of the statute in *GTE New Media Services Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1351 (D.C.Cir.2000). In *GTE,* the court held that a plaintiff must meet the standards of the first clause of Section 12 and demonstrate proper venue in the relevant jurisdiction prior to availing itself of the scope of the second clause permitting service in those areas. *See id.* (defendants must be inhabitants of, be found in, or have transacted business in the District as required by first clause of Section 12). Accordingly, the Court does not have personal jurisdiction over any of the defendants pursuant to Section 12 of the Clayton Act under a theory of national contacts.

■ If, on the other hand, plaintiff is asserting that the Court has jurisdiction over the defendants under the "transacts business" language of the first clause of Section 12, the analysis largely parallels the analysis of the similar jurisdictional grant found in the District of Columbia long-arm statute with one exception; jurisdiction under Section 12 does not require that the transactions on which jurisdiction is based be related to the cause of action underlying the suit. *See Diamond Chemical Co., Inc. v. Atofina Chemicals, Inc.,* 268 F.Supp.2d 1, 10 (D.D.C.2003) (citing *Chrysler Corp. v. General Motors Corp.,* 589 F.Supp. 1182, 1195 (D.D.C.1984)). In determining whether jurisdiction over defendants exists pursuant to the Clayton Act, the Court must assess only "whether the corporation is doing business in the district of any substantial character, even if its business is entirely interstate in character and is transacted by agents who do not reside in the District." *Caribe Trailer*

---

**11.** Furthermore, assuming CES's contacts with the District of Columbia stemming from its agreement with WGES to market natural gas in the District could be imputed to Columbia Gas, plaintiff does not allege that its claims against Columbia Gas arise from that marketing contract as is required by the long-arm statute in order to assert jurisdiction. *See* D.C. CODE 13–423(b) ("When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him."); *Novak–Canzeri v. Al Saud,* 864 F.Supp. at 206.

*Systems, Inc. v. Puerto Rico Maritime Shipping Authority*, 475 F.Supp. 711, 716 (D.D.C.1979); *see also Armco Steel Co., L.P. v. CSX Corp.*, 790 F.Supp. 311, 319–20 (D.D.C.1991); *Mylan Laboratories, Inc. v. Akzo, N.V.*, Civil Action No. 89–1671, 1990 WL 58466 at *6 (D.D.C. Mar. 27, 1990)1990 U.S. Dist. LEXIS 3521, at *21; *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. at 1195. The Court should look for "tangible manifestations of doing business" in the District, such as the presence of officers, employees, agents, offices, ownership of property, maintenance of corporate records or bank accounts. *Caribe Trailer Systems, Inc. v. Puerto Rico Maritime Shipping Authority*, 475 F.Supp. at 716.

Incorporating the Court's discussion and conclusion that the plaintiff has not alleged facts demonstrating that the defendants transacted business sufficient to establish jurisdiction under the District of Columbia long-arm statute, *see supra* at 43–48, the Court necessarily also concludes that plaintiff has not alleged any facts that demonstrate any "tangible manifestations of doing business" in the District of Columbia, or any other basis on which the Court could find that any of the defendants transacted business of a "substantial character." In addition, plaintiff does not argue that it has alleged any additional contacts unrelated to the claims in the amended complaint on which the Court could rest personal jurisdiction under the Clayton Act. Plaintiffs' claim that jurisdiction exists over defendants under the Clayton Act thus fails.

### E. General Jurisdiction Pursuant to Section 13–334(a) of the D.C.Code

■ In its post-argument supplemental brief, plaintiff asserts that the Court has jurisdiction over Columbia Gas pursuant to the general jurisdictional grant of Section 13–334(a) of the District of Columbia Code.[12] Under the doctrine of general jurisdiction, a court may exercise personal jurisdiction over a non-resident defendant when that non-resident defendant has engaged in "continuous and systematic general business contacts" in the forum, notwithstanding the fact that those contacts do not relate to the underlying cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *see also Gorman v. Ameritrade Holding Corp.*, 293 F.3d at 509; *El–Fadl v. Central Bank of Jordan*, 75 F.3d at 675. Jurisdiction under Section 13–334(a) requires that such systematic contacts demonstrate "a 'continuing corporate presence in the forum . . . directed at advancing the corporation's objectives.'" *El–Fadl v. Central Bank of Jordan*, 75 F.3d at 675 (quoting *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d at 851). The reach of such general jurisdiction in the District of Columbia is "coextensive with the reach of constitutional due process." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d at 510 (citing *Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1148 (D.C. 1985)).

12. Section 13–334(a) provides that "[i]n an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court." D.C. CODE § 13–334(a). Although the provision facially concerns service of process, it has been construed to provide a general jurisdictional grant under certain circumstances. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510, n. 1 (D.C.Cir.2002); *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C.1981)

■ Plaintiff rests its general jurisdiction claim on the ground that "the principal defendant, Columbia Gas Transmission Corporation, operates an 'active' Internet website in the form of an electronic bulletin board (EBB) [ (the "Navigator" site) ] that gas traders in the District can and do use to schedule natural gas deliveries on the [Columbia Gas] interstate pipeline system pursuant to transportation agreements between [Columbia Gas] and the marketers." Pl.'s 2d Supp. Mem. at 14. In support of this claim, plaintiff provides the affidavit of the President of Atlantigas Corp. John R. Cory, in which he avers: (1) that PEPCO Energy Services, Inc. ("PES") was located for some time between 2000 and 2002 in the District of Columbia and used the Navigator site to nominate gas transactions on the Columbia Gas Pipeline from the District office; (2) that he has personal knowledge that PEPCO scheduled transactions from its office in Washington, D.C. through the Navigator site at some point, although Mr. Cory does not have access to the Columbia Gas/PEPCO Navigator transactional records; and (3) that NP, a "marketer of natural gas with offices in Washington, D.C. nominated gas transactions on the [Columbia Gas] pipeline using Navigator." Pl.'s 2d Supp. Mem., Affidavit of John R. Cory, Sr. ("Cory Aff.") ¶¶ 4–7. Mr. Cory avers on his belief that the PEPCO and NP transactions through the website were "continuous and systematic," but offers no foundation for this belief. *Id.* ¶ 6.[13]

Assuming that Mr. Cory's statements are accurate, such contacts with the District of Columbia do not provide an adequate ground for general jurisdiction over Columbia Gas. In *Gorman v. Ameritrade Holding Corp.,* the court of appeals provided the standard by which a claim of Section 13–334(a) general jurisdiction on the basis of website activity should be evaluated. After noting that the general jurisdiction doctrine is flexible enough to expand to incorporate developing technologies such as the internet and electronic commerce, the court concluded that the jurisdictional test remained whether the plaintiff had alleged "continuous and systematic" contacts with the District. *See Gorman v. Ameritrade Holding Corp.,* 293 F.3d at 512. Initially a court must determine whether the non-resident defendant's website is more "passive," that is, for example, merely informational in nature, or more "active," whereby the defendant actually transacts business of a systematic and continuous nature with customers in the District of Columbia through the website. *See id.* Even if it is interactive, the website must be used by a defendant to do business with residents in the forum state in a continuous and systematic way. Mere

---

13. With their response to plaintiff's post-argument supplemental brief, defendants provide the declaration of Jonathan T. Young, an employee of Columbia Gas in the Customer Service/Volume Management Unit, to contest much of what Mr. Cory avers. *See* Defendants' Reply to Plaintiff's Supplemental Memorandum in Opposition to the Motion to Dismiss Plaintiff's Amended Complaint ("Defs.' 2d. Supp. Opp."), Ex. 1, Declaration of Jonathan T. Young ("Young Decl."). Mr. Young states that he has responsibilities for and works regularly with the Navigator site and that according to Columbia Gas's ordinary business records, PEPCO has done no business with Columbia Gas since 1994. *See id.* ¶¶ 2, 6. Mr. Young further states that although its records reflect two accounts for an NP Energy, located in Louisville, Kentucky and McLean, Virginia, respectively, Columbia Gas has no record of any NP Energy office located in the District of Columbia. *See id.* ¶ 7. Mr. Young also refines plaintiff's assertion that PES contracted with Columbia Gas from the District of Columbia through the Navigator for a short period of time, stating that the time period alleged with respect to PES was in fact less than eight months, from September 28, 2001 through May 15, 2002. *See id.* ¶ 5.

access by forum residents to a non-resident defendant's website is not enough, by itself, to establish minimum contacts with the forum. *See id.* (citing *GTE New Media Services, Inc. v. BellSouth Corp.,* 199 F.3d at 1350). The question is not whether District of Columbia residents "can" transact business in the District with the non-resident defendant through the defendant's website, but if they actually "do" engage in sustained business activities in a continuous and systematic way. *See Gorman v. Ameritrade Holding Corp.,* 293 F.3d at 512–13.

In *Gorman,* the court concluded that general jurisdiction likely existed over a brokerage firm where resident customers freely accessed the firm's website to open brokerage accounts, to transmit funds to those accounts electronically, to use the accounts to buy and sell securities, and to enter into binding contracts with the defendant. *See Gorman v. Ameritrade Holding Corp.,* 293 F.3d at 513. *Compare with GTE New Media Services, Inc. v. BellSouth Corp.,* 199 F.3d at 1350 (operation of internet yellow-pages website accessible to D.C. residents passive; insufficient basis for personal jurisdiction) *and Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.,* 989 F.Supp. at 272 ("The act of posting a message on an AOL electronic bulletin board—which certain AOL subscribers may or may not choose to access, according to each individual's tastes and interests—is not an act purposefully or foreseeably aimed at the District of Columbia" and thus not grounds for personal jurisdiction).[14]

Although the Navigator itself is not wholly passive in nature, Columbia Gas's

contracting on the Navigator site for transportation and storage services with one District of Columbia company over an eight-month period together with vague claims that two other District residents also contracted with Columbia Gas over its website at some point simply do not demonstrate a systematic and continuous contact with the forum. *Compare CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1264 (6th Cir.1996) (jurisdiction exists where defendant entered into contract with forum-based plaintiff to market and distribute defendant's software through internet server over three-year period, thereby creating on-going marketing relationship); *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1126 (W.D.Pa.1997) (defendant contracted to provide internet service to 3000 in-forum customers and to seven Internet service access providers who in turn furnished defendant's services to providers' own in-forum customers).

The questions at the core of all personal jurisdiction inquiries are whether the commercial actor that is the subject of the lawsuit "purposefully availed itself of the privilege of conducting business in the forum state" and whether the defendant's conduct in connection with the forum is such that it "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. at 474–75, 105 S.Ct. 2174 (internal citation and quotation omitted). Thus, under a theory of general jurisdiction, a court must find that the contacts alleged are so systematic and continuous that they serve to put a non-resident defendant on notice that it may have to answer claims raised against it in the forum state. *See Perkins v. Ben-*

14. To the extent that plaintiff asserts that PES adversely was affected by false information posted by Columbia Gas on the Navigator and that this fact should be considered in the Court's general jurisdictional analysis, such contact is exactly the type of "passive" contact the court of appeals found insufficient to demonstrate systematic and continuous contact with the District. *See* Pl.'s 2d Supp. Mem. at 9–10; Cory Aff. ¶ 5.

*guet Consolidated Mining Co.,* 342 U.S. 437, 446–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *In re Baan Co. Securities Litigation,* 81 F.Supp.2d 75, 82 (D.D.C.2000) ("The presence of a corporation ... in a forum may be so continuous and deep that the assertion of any cause of action against it may be entertained in that forum."); *Ross v. Product Development Corp.,* 736 F.Supp. 285, 290 (D.D.C.1989) (defendant's "continuing contacts with the District have provided it with clear notice that it is subject to suit here" under Section 13–334(a)). If the Court concluded in this case that the sporadic contacts related to the alleged use of the Navigator website by three District residents justified the exercise of jurisdiction over Columbia Gas under Section 13–334(a), the Court would stretch the concept of general jurisdiction beyond what either the statute or due process permits.

### F. Plaintiff's Request for Jurisdictional Discovery

■ Plaintiff requests the Court to allow it to take jurisdictional discovery if it concludes that the allegations pertaining to personal jurisdiction are insufficient. *See* Pl.'s Colum. Opp. at 8; Plaintiff's Memorandum in Opposition to Motion to Dismiss of Defendant Cove Point LNG Limited Partnership at 7–8. Plaintiff relies on the court of appeals' decision in *GTE,* which states that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Services, Inc. v. BellSouth Corp.,* 199 F.3d at 1350. When requesting jurisdictional discovery, however, a plaintiff must make a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *United States v. Philip Morris Inc.,* 116 F.Supp.2d at 130, n. 16. Where there is no showing of how jurisdictional discovery

would help plaintiff discover anything new, "it [is] inappropriate to subject [defendants] to the burden and expense of discovery." *COMSAT Corp. v. Finshipyards S.A.M.,* 900 F.Supp. at 524, n. 4.

Plaintiff does not assert how it can supplement its allegations through discovery, but asserts only that it seeks jurisdictional discovery "to confirm that the Columbia Defendants have customers in the District of Columbia or otherwise 'transact business' in the District of Columbia." *See* Pl.'s Colum. Opp. at 8. Such generalized predictions are not enough to justify jurisdictional discovery. Even when explicitly requested by the Court at oral argument to articulate in its supplemental briefing what discovery it would seek and how such discovery would help, plaintiff failed to respond. *See* Pl.'s 2d. Supp. Mem. Plaintiff's request to supplement its jurisdictional allegations through discovery is not merely ambiguous, it is conclusory and vague, and therefore insufficient.

## III.   CONCLUSION

For the forgoing reasons, the Court concludes that it lacks personal jurisdiction over all defendants in this matter. Accordingly, the Court declines to reach the merits of defendants' remaining motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. An Order consistent with this Opinion was issued on September 29, 2003, and an Amended Order was issued on October 3, 2003.

SO ORDERED.